1 Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
2 STRUCK WIENEKE & LOVE, P.L.C.
3100 West Ray Road, Suite 300
3 Chandler, Arizona 85226
Telephone: (480) 420-1600
4 Fax: (480) 420-1699
kwieneke@swlfirm.com
5 cretts@swlfirm.com

6 Attorneys for Defendants City of Phoenix,
Phoenix Police Chief Daniel Garcia, Sergeant
7 Mike Wesley, Officer Justin Schmidt, Officer
Robert Mathews, Officer Kevin Linn,
8 Sergeant Christopher Leubkin, Officer
Jeremy Hessner, and Lieutenant Stan Hoover
9

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Yolanda Erickson, individually and as personal representative of the Estate of Miguel Ruiz, Canon Ruiz, minor A.R., | NO. 2:14-cv-01942-JAT |
| Plaintiffs, | **JOINT PROPOSED CASE MANAGEMENT PLAN** |
| v. | |
| City of Phoenix, a public entity; Phoenix Police Chief Daniel Garcia, individually and in his official capacity as Chief of the City of Phoenix Police Department; Sergeant Mike Wesley, individually and in his official capacity as a police officer for the City of Phoenix Police Department; Officer Justin Schmidt, individually and in his official capacity as a police officer for the City of Phoenix Police Department; Officer Robert Mathews, individually and in his official capacity as a police officer for the City of Phoenix Police Department; Officer Abraham Camarillo, individually and in his official capacity as a police officer for the City of Phoenix Police Department; Officer Kevin Linn, individually and in his official capacity as a police officer for the City of Phoenix Police Department; Sergeant Christopher Leubkin, individually and in his official capacity as a police officer for the City of Phoenix Police Department; Lieutenant Stan Hoover, individually and in | |

3924872.1

his official capacity as a police officer for the
City of Phoenix Police Department,

Defendants.

1.    The nature of the case, setting forth in brief statements the factual and legal basis of plaintiff's claims and defendant's defenses:

**Plaintiffs:**

On July 28, 2013, between the hours of 7:00am and 8:15am, Phoenix Police Department Officer Camarillo and several other officers killed Miguel Angel Ruiz, (hereinafter, "Michael") while he was seated on a second floor landing at his apartment complex.  The officers were dispatched to an apartment complex at 4241 N. 23rd Avenue to help the apartment manager cajole resident, Michael Ruiz off of the roof.  Michael had been known to assist management at this apartment complex with the A/C unit in the past. It is believed that Michael was attempting to fix the unit prior to police contact. While Michael was up on the roof, a pipe may have burst, causing water to flow through an alleged [name] caller's apartment, causing damage.  Some of the residents reported that Michael had used methamphetamine in the past and they believed he might have used it prior to him getting onto the roof. Officers who arrived on scene observed, Michael Ruiz' condition, and commented that they thought something may be wrong with him.  The complex manager, Gary made contact with officers and directed them to Ruiz' apartment, which was open with water flowing out of the door.  A welfare check revealed that the toilet had been removed and the bathtub was running and flooding the apartment.  The residue and smell of fire was also observed.

After observing the damage, the manager reported to officers that the owner wanted Ruiz off of the roof. Due to Michael's location and a concern for the structural integrity of the roof, the fire department's bucket ladder was utilized to take Officers Wesley, Schmidt, and Hessner the roof to negotiate Michael off of the roof.  Before getting into the bucket, the officers devised a plan where they would coax Michael to the bucket and tase him once he was inside the bucket with them. With three officers inside,

the bucket, it was raised to a position at the roofline that would allow Michael to walk off of the roof into the bucket.   Upon looking at the video footage, you can see Michael approaching the bucket after speaking the police officers for a number of minutes.   As Michael approaches the bucket, he is immediately tased by Officer Schmidt.   Michael backs up and away from the bucket and pulls the prongs out of his shoulder and sits down on the roof.   The officers kept telling Michael that he had to get down off of the roof. After a number of minutes pass, Michael abides their commands and lets himself down off of the roof to the second floor landing.   Michael immediately sits on his buttocks and places his hands and arms up in the air as if he was waiting to be detained.

The Officers Camarillo, Lin and Leubkin immediately ran up the stairs and attacked Michael without giving any commands initially.   Officer Camarillo was the first to reach Michael.   Although Officer Camarillo states that Michael was sitting on his buttocks when he first approached him, he still grabbed Michael and employed the carotid control technique.   Michael never tried to actively resist the officers.   Michael repeatedly begged for the officers to stop hurting him and he repeatedly stated that he could not breathe.   Based on the video evidence and police reports, the officers' use of unreasonable force did not stop until Michael was dead.   This forced included, a knee strike, taser drive stuns and deployment of tasers as well.   After they used the unreasonable force, they placed handcuffs on Michael's dead body and carried him down the stairs without any regard to his wellbeing.

Michael was resuscitated at the scene and transported to St. Joseph's Hospital and Medical Center.   Upon arrival at the hospital, Michael went into pulse-less electrical activity and required emergency resuscitation in the emergency unit and was resuscitated again. Michael presented with anoxic brain injury due to the carotid control technique, hemorrhage of the right stennocleidomastoid muscle, fracture of the right cornu of the thyroid cartilage with associated hemorrhage.   Michael's brain activity showed secondary myoclonic seizure activity, rhabdomyolysis, and systemic inflammatory

response syndrome.  Michael further presented with mild extracranial soft tissue swelling and hypoxic ischemic encephalopathy.  Michael received multiple blunt force injuries to his head, which left abrasions and a conjunctival hemorrhage.  Michael received blunt force injuries of the torso, which left abrasions and there was also a subcutaneous tissue hemorrhage of the torso.  Michael received blunt force injuries to his extremities, which also left abrasions and contusions as well as subcutaneous hemorrhage.  Michael had to undergo endotracheal intubation during his hospital stay because of the anoxic brain injury.  Michael's condition never improved, doctor's informed the family that his chances of recovery were extremely poor.  As such, Michael's mother, Yolanda Erickson elected to withdraw care.

The Officers in this case used unjustified unreasonable force and committed numerous acts of aggravated assault, in violation of A.R.S. § 13-1204 during the time he was in their custody.

**The City of Phoenix, Chief Garcia, Lt. Hoover, Sgts. Wesley, Leubkin, and Officers Matthews, Linn, Schmidt, Hessner (hereinafter the "City Defendants"):**

On July 28, 2013, at 7:34 a.m., officers were dispatched to an apartment complex at 4241 N. 23rd Avenue to address a suspicious subject on the roof.  It was reported that the suspect was also "messing with" the A/C unit such that it was causing water to flow through the caller's apartment, causing damage.  It was reported that the suspect on the roof was a known drug user (of "crystal") and had been running around the night before "burning things."  Officers who arrived on scene observed the decedent, Michael Ruiz, on the roof with a shirt draped over his head.   The complex manager made contact with officers and directed them to Ruiz' apartment, which was open with water flowing out of the door.  A welfare check revealed that the toilet had been ripped out of the ground—water was gushing out—the bathtub was running and flooding the apartment. The residue and smell of fire was also observed.

After observing the damage, the manager reported to officers that the owner wanted Ruiz off of the roof and wanted to prosecute for the damage caused—to the apartment and to the roof.  Ruiz' background had been checked, which revealed that he was on probation for a conviction of aggravated assault on a police officer Because it was reported to officers that the roof was structurally unstable, the fire department's bucket ladder ("cherry picker") was summoned to take officers to the roof to negotiate Ruiz' coming down.  With three officers inside, the bucket was raised to a position at the roofline that would best prevent Ruiz from falling.  After negotiating for several minutes, Ruiz approached the bucket, but became angry when officers informed him that he would need to be placed in handcuffs to descend from the roof.  Ruiz then grabbed Sgt. Wesley's hand—committing an aggravated assault—and the Taser was deployed by Officer Schmidt, but did not make sufficient contact and had no effect.  After several more minutes, Ruiz jumped down from the roof to a second floor landing, which had the potential of providing direct access to an apartment that appeared to be unsecured.

Officers ran to the top of the stairs to place Ruiz under arrest and prevent him from gaining access to the apartment.  Ruiz then began actively resisting arrest, refusing to follow multiple repeated commands to stop resisting.  Officer Matthews applied the Taser in an attempt to prevent Ruiz from actively bracing his legs against the structurally unsound railing to resist arrest, and to prevent Ruiz from detaching the railing and causing everyone to fall off of the landing.  When he was finally placed in handcuffs and carried down the stairs, the fire department noticed that Ruiz had stopped breathing and began providing emergency aid.

The medical examiner's toxicology report revealed the presence of methamphetamine and Citalopram, a combination that produces known adverse reactions.  Discovery may reveal that Ruiz was also under the influence of bath salts.  The Medical Examiner determined that "methamphetamine use can produce cardiac arrhythmias and

subsequent anoxic brain injury without other intervening factors; therefore, its role in the decedent's death cannot be excluded."

Drug use and criminal behavior trigger the application of A.R.S. §§ 12-711, 712, and 716.  Ruiz violated the following Arizona criminal statutes:  A.R.S. § 13-3407 (use of methamphetamine); A.R.S. § 13-1204 (aggravated assault on a police officer); A.R.S. §  13-1702 & 1704 (reckless burning and/or arson of an occupied structure for the fire in his apartment); A.R.S. § 13-1602  (felony for the criminal damage in the apartment); A.R.S. § 13-1602 & 13-1605 (felony for the criminal damage on the roof, which can be aggregated with the apartment criminal damage); A.R.S. § 13-2908 (criminal nuisance); A.R.S. § 13-1502 & 13-504 (criminal trespassing, including remaining on the roof after a request to leave by a law enforcement officer, or remaining unlawfully in or on a residential structure a class 6 felony); A.R.S. § 13-2402 (obstruction of government operation by hindering a police officer in preservation of the peace); A.R.S. § 13-508  (resisting arrest); and A.R.S. § 13-2904 (disorderly conduct).

A.     Probable Cause for Arrest

Officers had probable cause to arrest Ruiz when he was on the roof, and after he jumped down.  *See Tatum v. City and County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006) ("(a) police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a "fair probability" that the suspect has committed a crime.") "An officer who observes criminal conduct may arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty."  *Id*. at 1094, *citing Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  As noted above, Ruiz committed multiple criminal violations, including attempting to evade arrest by flight.

B.     Objectively Reasonable Use of Force-

In analyzing an excessive force claim, the inquiry is "whether the officers' actions (were) "objectively reasonable" in light of the facts and circumstances confronting them."  *Graham v. Connor,* at 397.  "The "reasonableness" of a particular use of force

must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.   Whether a particular use of force was "objectively reasonable" depends on several factors including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others and whether the suspect was resisting arrest. *Id.*

None of the officers utilized excessive force.   Ruiz—while under the influence of an intoxicating drug—committed multiple misdemeanor and felony offenses. He jumped from the roof in an attempt to flee officers' attempts to arrest him. *Lindsay v. Kiernan*, 378 F.App'x 606 (9th Cir. 2010) (police responding to a complaint that a belligerent, intoxicated man refuse to leave the premises, were justified in using the Taser multiple where the suspect refused to follow commands, barreled through them, and resisted arrest); *Wimett v. Southern*, 2014 WL 4059768 (D. Oregon 2014) (multiple cycles of a Taser on a suspect, who resisted arrest and could not be subdued with control holds and verbal commands, was not excessive)  He then actively resisted arrest. *See Mendez v. City of Scottsdale*, 2014 WL 2569137, *4 (D.Ariz. 2014).

The uses of force were also justified under Title 13.  A.R.S. § 13-420 will apply to provide an award of attorney fees, costs, and all expenses for any officer whose conduct is found to be justified under Arizona law.

C.     Proximate Cause

Plaintiffs must prove that each of the uses of force was the cause of the injury, any use of force that did not cause death abates pursuant to Arizona's survival statute. *See also*, *Fernandez v. Virgillo,* 2014 WL 828383 (D.Ariz. 2014) (ruling that a claimed illegal entry into a trailer did not cause the death, was barred by the survival statute, and that abatement did not adversely affect the deterrence goals of Section 1983). None of the uses of force caused the death.  Instead, Plaintiffs use of methamphetamine, Citalopram, and potentially bath salts caused the decedent's cardiac event.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    D.     <u>Qualified Immunity</u>

       The defense of qualified immunity requires courts to enter judgment in favor of a government employee unless the employee's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan,* 555 U.S. 223, 236 (2009); *Lacey v. Maricopa County*, 649 F.3d 1118, 1131 (9th Cir. 2011). The officers are entitled to qualified immunity because their actions were legal in the light of clearly established law and information possessed at the time.

    E.     *Monell* Allegations

       Where there is no underlying constitutional violation, there can be no *Monell* liability. Thus, where the claims against the officers fail, so do the claims against a municipality.  In addition to this, the City's training and policies are constitutional, and all of the officers were POST certified, which also establishes sufficient training.  Plaintiffs may not state a *Monell* claim based upon allegations that a policy or training is constitutional, but that there are isolated violations of that policy and/or training. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

    F.     <u>Notice of Claim</u>

       Further, although Plaintiffs served a Notice of Claim, the sufficiency of the notice—as it relates to the facts supporting the claimed damages—is in question. Defendants have not yet filed a Motion to Dismiss relative to this issue, as some damages discovery will be necessary to determine whether the notice was sufficient, or not. Defendants do not waive their right to challenge the sufficiency of the notice of claim. Defendants also incorporate, by reference, the defenses set forth in their Answer and the arguments set forth in their Motion to Dismiss.

**Officer Camarillo:**

Defendant Officer Abraham Camarillo ("Defendant Camarillo") concurs with the City Defendants' description of the incident, Ruiz's criminal conduct, and Ruiz's drug use.

As stated in City Defendants' description of the incident, the officers, including Defendant Camarillo, had probable cause to arrest Ruiz, Ruiz resisted arrest and the officers, including Defendant Camarillo were required to move in quickly restrain Ruiz. Applying the factors set forth in *Graham v. Conner*, Defendant Camarillo's use of force was objectively reasonable under the circumstances. *Graham v. Connor* at 388. Specifically, after Ruiz resisted arrest and attempted to evade arrest by flight, Defendant Camarillo reached Ruiz and placed his left arm over Ruiz's shoulders to hold him down. At that point, Ruiz started pivoting and moving around, causing Defendant Camarillo to become pinned between Ruiz and a wall. Defendant Camarillo continued to apply pressure in an effort to hold Ruiz in place so that the other officers could handcuff him. When Ruiz was finally placed in handcuffs and carried down the stairs, the fire department noticed that Ruiz had stopped breathing and began proving emergency aid.

Defendant Camarillo's action were justified and constitutional and at a minimum, he is entitled to qualified immunity. Additionally, Defendant Camarillo's actions were not the proximate cause of Ruiz's death. Rather, other factors, including but not limited to Ruiz's use of methamphetamine, Citalopram and potentially bath salts were the proximate cause of his death.

Defendant Camarillo hereby joins in City Defendants' legal basis of claims section A through D and F.

2.    The jurisdictional basis of the case, citing specific statutes:

**The court has original jurisdiction over the 42 U.S.C. § 1983 constitutional claims pursuant to 28 U.S.C. 1441(a), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. 1441(c).**

3.     The parties, if any, which have not been served, as well as any parties which have not filed an answer or other appearance:

**All parties listed in the caption have been served and have filed an Answer.   A Stipulation for Dismissal, without prejudice, pertaining to all claims against Officer Hessner is pending.**

4.     The names of parties not subject to the Court's jurisdiction:

**None.**

5.     Whether the case is suitable for reference to arbitration, to a special master, or to a United States Magistrate Judge for trial, and, if so, whether the parties consent to trial before a Magistrate Judge:

**The parties do not consent to a Magistrate Judge.**

6.     The status of related cases pending before other judges of this Court or before other courts:

**None.**

7.     Suggested changes, if necessary, in the timing, form, or requirement for disclosures under Rule 26(a), Federal Rules of Civil Procedure, including a statement of when Initial Disclosures were made or will be made. Initial disclosures shall be in compliance with Rule 26(a)(1) of the Federal Rules of Civil Procedure.  Unless otherwise stipulated to in writing by the parties or directed by a written order of this Court, Initial Disclosures shall be made at the initial Rule 26(f) Case Management Meeting or within ten (10) days after the meeting. **IT IS FURTHER ORDERED** that to satisfy the requirements of Federal Rule of Civil Procedure 26(a), the parties shall file with the Clerk of the Court a <u>Notice of Initial Disclosure</u>; copies of the actual disclosures shall not be filed.

**The parties stipulated and agreed that Initial Disclosure Statements shall be made on November 6, 2014.**

8.    Proposed deadlines for:

a.    filing a motion to amend the pleadings;

       **December 13, 2014**

b.    disclosure of expert testimony under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure;

**The parties request expert disclosure to occur as follows:**

       **Plaintiffs' disclosure of experts:**

       **August 1, 2015**

       **Defendants' disclosure of experts:**

       **October 1, 2015**

       **Rebuttal experts:**

       **November 1, 2015**

c.    discovery (In preparing the <u>Joint</u> Proposed Case Management Plan, the parties shall suggest their proposed deadlines keeping in mind that the Court will **<u>not</u>** entertain discovery disputes after the close of discovery barring extraordinary circumstances. Therefore, the proposed deadlines shall give sufficient time to **<u>complete</u>** discovery by the deadline (**<u>complete</u>** being defined as including the time to propound discovery, the time to answer all propounded discovery, the time for the Court to resolve all discovery disputes, and the time to complete any final discovery necessitated by the Court's ruling on any discovery disputes)); and

d.    filing dispositive motions:

       **April 1, 2016**

e.    close of all discovery, including depositions of parties, witnesses, and experts, answers to interrogatories, and supplements to interrogatories must be completed by:

1

2

**January 30, 2016**

f.    Case specific deadlines:

**Defendants anticipate filing a Motion for Summary Judgment on the merits, but also request the opportunity to file an early Motion for Summary Judgment on the basis of qualified immunity—as deemed necessary. Defendants request only one date for filing dispositive motions (as set forth above) and not a specific date for filing of an early qualified immunity motion. Where Plaintiffs have also asserted state law claims against many of the individuals, the resolution of qualified immunity will not resolve claims for all Defendants. Discovery in the case may reveal that it is more efficient to file only one Motion for Summary Judgment. Defendants, however, do not want to waive the right to have the issue of qualified immunity decided at the earliest practical time.**

9.    Suggested changes, if any, in the limitations on discovery imposed by the Federal Rules of Civil Procedure and/or Civil Local Rule 16.2 of the Rules of Practice for the United States District Court for the District of Arizona:

**None**

10.    The estimated date that the case will be ready for trial, the estimated length of trial, and any suggestions for shortening the trial:

**The parties are in agreement with the Court's standard order that, if dispositive motions are pending following the dispositive motions deadline, Plaintiffs shall file and serve a Notice of Readiness for Final Pretrial Conference within ten (10) days after the resolution of the last dispositive motion.**

**The City Defendants and Officer Camarillo anticipate filing a Motion to Bifurcate the claims against the individual officers from the *Monell* claim. This**

**procedure has the potential to save resources for all parties and shorten trial as the *Monell* claims cannot proceed if there is no liability for the individual officers.  If bifurcation is granted, the City Defendants and Officer Camarillo anticipate that trial of the claims against the individuals will take 12 days.  The City anticipates that trial of the *Monell* claims will take an additional 5-7 days.**

11.     Whether a jury trial has been requested and whether the request for a jury trial is contested.  If the request for a jury trial is contested, the <u>Joint</u> Proposed Case Management Plan shall set forth the reasons why a trial by jury is in dispute:

**A jury trial has been requested by all parties.**

12.     The prospects for settlement, including (a) any request to have a settlement conference before another United States District Court Judge or a Magistrate Judge, or (b) other request of the Court for assistance in settlement efforts:

**The City Defendants and Officer Camarillo believe that settlement discussions would be most fruitful after some initial damages discovery has been conducted.  A settlement conference has not been requested and these Defendants anticipate participating in mediation.  If mediation is not successful, the parties will request the Court's assistance in setting a settlement conference.**

13.     Modification of pretrial procedures due to the simplicity or complexity of the case, and any other matters which counsel believes will aid the Court in resolving this dispute in a just, speedy, and inexpensive manner:

**None other than outlined above relative to the City Defendants and Officer Camarillo's anticipated request for bifurcation.**

/ / /

/ / /

/ / /

/ / /

1     DATED November 3, 2014

2                                     STRUCK WIENEKE & LOVE, P.L.C.

3

4                                     By    /s/ Christina Retts
                                          Kathleen L. Wieneke
5                                         Christina Retts
                                          Struck Wieneke & Love, P.L.C.
6                                         3100 West Ray Road, Suite 300
                                          Chandler, Arizona  85226
7                                         Attorneys for Defendants City of Phoenix,
                                          Phoenix Police Chief Daniel Garcia,
8                                         Sergeant Mike Wesley, Officer Justin
                                          Schmidt, Officer Robert Mathews, Officer
9                                         Kevin Linn, Sergeant Christopher Leubkin,
                                          Officer Jeremy Hessner, and Lieutenant
10                                        Stan Hoover

11                                    BLACKWELL LAW OFFICE, PLLC

12

13                                    By    /s/ Christina Retts (with authority)
                                          Jocquese L. Blackwell
14                                        Blackwell Law Office, PLLC
                                          818 N. 5th Avenue
15                                        Phoenix, Arizona 85003
                                          Attorney for Plaintiffs
16
                                      JONES, SKELTON & HOCHULI, P.L.C.
17

18

19                                    By    /s/ Christina Retts (with authority)
                                          John T. Masterson
20                                        Jones, Skelton & Hochuli, P.L.C.
                                          2901 North Central Avenue, Suite 800
21                                        Phoenix, Arizona 85012
                                          Attorneys for Defendant Officer Abraham
22                                        Camarillo

23

24

25

26

27

28

3924872.1                                        14

1

**CERTIFICATE OF SERVICE**

2

3        I hereby certify that on November 3, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

5        Jocquese L. Blackwell:        jocquese@azjustice.com
                                        jocquese@gmail.com

6        John T Masterson:             jmasterson@jshfirm.com
                                        cmiller@jshfirm.com

7                                       mcarroll@jshfirm.com

8

9        I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

10

11       N/A

12

13                                      /s/ Christina Retts

14
2976631.1

15

16

17

18

19

20

21

22

23

24

25

26

27

28